## BOGALUSA ICE CO. v. MOFFETT et al.
### No. 1817.

Court of Appeal of Louisiana. First Circuit.
March 9, 1938.

Benj. W. Miller, of Bogalusa, for appellant.

Talley & Richardson, of Bogalusa, for appellees.

OTT, Judge.

Plaintiff firm is engaged in the manufacture and sale of ice in the city of Bogalusa. Defendants, prior to the filing of this suit, had purchased ice from plaintiff at a certain price per block and had sold and delivered it on the streets of Bogalusa by means of trucks operated over more or less well-defined routes. The ice company seeks by this suit to be recognized as the owner and entitled to the possession of a certain Ford truck, with ice tongs and ice covers, in the possession of defendants; and it also seeks an injunction against the defendants to restrain them from (1) using said truck and equipment in delivering ice to any persons whatsoever; (2) using any truck, similar in coloration to that of plaintiff's well-known red trucks, for the purpose of delivering ice to any persons; and (3) from selling or attempting to sell any ice to any of plaintiff's customers upon the routes built up by it, until defendants notify the customers that they are no longer connected with plaintiff firm.

A judicial sequestration without bond was ordered for the truck, and a temporary restraining order was issued without bond, and defendants were ordered to show cause on September 1, 1937, why a preliminary writ of injunction should not be issued. Defendants filed a motion to dissolve the judicial sequestration of the truck and the temporary restraining order on the ground, among others, that they issued without any order for bond and without the giving of bond. The motion to dissolve was overruled, whereupon defendants applied to the Supreme Court for writs of certiorari, prohibition, and mandamus which were granted. The Supreme Court, after a full statement of the issues in the case, set aside the temporary restraining order as having improperly issued without bond, but refused to set aside the judicial sequestration of the truck issued without bond. See 188 La. 598, 177 So. 679.

The rule nisi for the preliminary injunction was heard on September 3, 1937, and on September 7th, a judgment was rendered, discharging said rule and denying the preliminary injunction. From that judgment plaintiff has taken a devolutive appeal. Defendants and appellees have filed in this court an exception of no cause or right of action based on the ground that the petition does not contain a prayer that the injunction issue upon the giving of bond, but only prays that the illegally issued restraining order be perpetuated without bond.

We do not think this exception is well taken. We find that in the prayer of the petition, after asking for citation of the defendants, the issuance of a judicial sequestration for the truck, and the issuance of a temporary restraining order, plaintiff prays for judgment recognizing it as the owner and entitled to the possession of the truck, and also for judgment making the temporary restraining order and the temporary injunction permanent, and enjoining the defendants from doing the things set out in the petition. It is contended that plaintiff could not get relief by asking for the maintenance of an illegal restraining order, and that no bond is asked to be fixed for the issuance of either a temporary or a permanent injunction. Leaving out of consideration the prayer for the restraining order and its perpetuation, plaintiff's petition is left with a prayer for a temporary injunction after hearing on rule, and for the perpetuation of the temporary injunction after a hearing on the merits.

We do not think that the failure to ask for the fixing of bond for the issuance of the temporary and permanent injunctions is fatal to plaintiff's petition, as on the hearing, the court could order the giving of a bond under the prayer for general relief, if the facts and the pleadings otherwise justified the issuance of an injunction. The court could not legally order the issuance of an injunction without requiring plaintiff to give a bond, as the law requires a bond before the injunction could issue.

The only other matter before us on the appeal is whether or not the trial court correctly refused to issue a preliminary injunction. In considering this phase of the case, the three separate and distinct acts which plaintiff is asking the court to enjoin defendants from doing will be discussed in the order in which they appear in the petition. It is manifest that if plaintiff has a right to enjoin defendants from doing any one of these acts, it is entitled to relief, although it may not be entitled to injunctive relief against the doing of all three acts.

The ground on which plaintiff claims the right to enjoin defendants from using the truck in delivering ice is that this truck had been used by them for some time in delivering the ice procured from plaintiff on

routes and to customers built up by plaintiff company in its ice business; that defendants took this truck which belongs to plaintiff and filled it up with ice procured from a rival concern and went out on the route which had been built up while defendants were selling ice for plaintiff, and that they deluded and misled the customers into believing that they were purchasing plaintiff's ice in the usual way. It is obvious that the principal object of the suit is to prevent the defendants from using this truck in delivering ice to old customers secured while selling them ice from this truck and while they were selling ice procured from plaintiff. The truck comes into the picture only in so far as it is being used by defendants in delivering the ice of a rival and is thereby calculated to lead the former customers to believe that the ice was procured from plaintiff.

Defendants claim that they own the truck and have a right to use it in delivering ice to their customers, regardless of where they purchase the ice for distribution. The ownership of the truck is relevant only in so far as the fact might show injury to plaintiff by reason of the use of its truck by defendants in such a way as to lead the customers to believe that defendants were still selling plaintiff's ice. The injunction is not intended to be directed against the truck itself, but only against its use to mislead the customers who had previously bought plaintiff's ice.

For many years the defendant Ollie C. Moffett had been selling ice which he purchased from the plaintiff at so much per block. Moffett operated his own truck and paid the expenses of the sale and delivery of the ice to more or less regular customers on certain routes. In the early part of 1935, this defendant purchased this truck from the Knight Motor Company for use in this ice business, and he gave notes for the greater part of the purchase price. The ice company ran an account with Moffett, charging him with advances made on his account, including payments on the truck and its upkeep, and giving him credit for payments made from time to time. On July 30, 1935, Moffett turned this truck back to the motor company, with the understanding that the truck was to be repaired and resold by the motor company, and the amount received for the truck, less the repairs and cost of selling, would be credited to the notes which Moffett owed on the truck. Some two months thereafter, an arrangement was made by Moffett and the ice company whereby the truck was to be turned over to Moffett and he was to continue the purchase and sale of ice as formerly, with the exception that he was to pay an additional 10 cents per block of ice, which amount was to be used to repay the amount advanced and to be advanced by the ice company on the truck, and until such time as the ice company had been repaid, the truck was to be considered as its property. This arrangement continued until about the middle of August, 1936, when, by reason of some misunderstanding between Moffett and the manager of the ice company, the ice company took back the truck and severed connection with Moffett. According to the ledger sheets of plaintiff company, Moffett owed the company a balance at that time of $488.59, including all amounts that the company had paid out on account of the truck.

Richard Moffett, the son of Ollie C. Moffett, then took over his father's business with the ice company, and the truck was given to him for use in delivering ice in the usual way, except that Richard Moffett was to pay an additional 15 cents extra for each block of ice purchased from the ice company, which amount was to take care of the expenses of operating the truck and, according to Moffett, when the amount was sufficient to pay out all claims against the truck, it was to belong to him. The conduct of the parties, particularly the fact that the ice company charged all amounts paid out by it on account of the truck to either Ollie C. Moffett or his son, shows that it was the intention of all parties that, when the ice company had been fully paid for all amounts advanced on account of the truck, it was to belong to the Moffetts.

Richard Moffett had some misunderstanding with the ice company, and on August 23, 1937, quit purchasing ice from the company, but, claiming that the truck had been fully paid out, took it and began delivery of ice to the old customers, which ice was procured from another ice dealer. This precipitated this suit. On the date that he severed his connection with the plaintiff company, Richard Moffett had, according to the ledger of the ice company, a credit balance of $433.68. In addition to this, he claimed that the manager of the ice company owed him a balance of some sixty or seventy dollars for ice delivered to the manager personally, and which amount Moffett claims was to be credited to his account

with the company. Therefore, assuming that the parties understood that the arrangement with Ollie Moffett and his son, Richard, with reference to the re-acquisition of the truck by them from the ice company was one continuous transaction, which seems to be the case, as all charges against the truck were made against the one or the other of the Moffetts, it is seen that there was a balance due the ice company by both Moffetts of only $54.91, after deducting the credit in favor of Richard Moffett from the debit against Ollie C. Moffett. If the personal account of the manager was to be credited to the Moffetts, there would be no balance according to the ledger, at the time that Richard Moffett severed his connection with the ice company.

The truck has been assessed to Ollie C. Moffett for the years 1935, 1936, and 1937. This indicates that the ice company was only interested in the truck to the extent of seeing that the advances made to the Moffetts were secured and refunded, and that it was the intention of the parties that the truck was considered as the property of the defendants. It is obvious that the ice company could not charge rent for the use of the truck or charge the defendants with the value of the truck as has been attempted since the suit was filed. If the Moffetts paid and refunded the amount advanced them on account of the truck by the ice company, they could not again be charged with the value of the truck, nor rent thereon for its use, as otherwise they would be paying for their own property a second time and rent for its use.

Plaintiff has failed to make out a prima facie claim of ownership of the truck, and in view of that fact, the use of it by the Moffetts in itself did not give rise for complaint on the part of plaintiff, as defendants could not be enjoined from using their own truck, no matter whose ice they were delivering with it.

In the second place, plaintiff seeks to enjoin defendants from using any truck, similar in coloration to that of its well-known red trucks. The only evidence in the record as to any distinctive color or sign on the trucks used by plaintiff company in its ice business is that of the manager. He says that the trucks had a green cab—Ford V8, and had a sign painted on each, on each side on the door; that they put the company sign on the trucks and red stickers on all trucks and ice deliveries. He does not say if there was any sign or sticker on the truck involved in this suit, nor does he say what the signs or stickers on the company's trucks contained. We are not able to determine from the evidence the nature of the label, trade-mark, device, or form of advertisement which plaintiff claims to have acquired by use and to which it claims to be entitled to ask protection under Act No. 49 of 1898. While counsel for plaintiff says in his brief that the truck involved here was red in color, with a brown or sand colored cab, with the words, "Depend on Ice in all Weather," painted on the door of the cab, we fail to find any proof in the record to support this statement. Nor for that matter do we find any proof in the record to show that the ice company's trucks had these words painted on their cabs. We are unable to say that defendants have used a truck similar in color and design to those used by the ice company in its business, nor can we determine from the evidence that the truck which defendants used was so similar in color, design, or advertisement placed thereon as to deceive or mislead any customers who purchased ice from them. It is therefore unnecessary for us to enter into a useless discussion as to the effect and meaning of the above-named act, and the circumstances that will justify the granting of an injunction to protect rights thereunder.

In the third place, plaintiff seeks to enjoin defendants from selling or attempting to sell any of the plaintiff's customers upon the route built up by it and on which defendants have operated as agents and employees of plaintiff, until defendants have notified said customers that they are no longer connected with plaintiff. The testimony does not show that plaintiff is responsible for building up an ice trade along this route any more than the defendants. The latter during the time they were connected with plaintiff bought and paid for the ice secured from plaintiff, and they in turn sold this ice to these customers. We cannot see that plaintiff has any exclusive right to the ice trade with these customers, nor do we think that the evidence shows any infringement of plaintiff's rights to sell ice to these or any other customers it may desire.

For the reasons assigned, the judgment appealed from is affirmed at the cost of appellant.